UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES                                    CRIMINAL ACTION

VERSUS                                                      NO. 16-40

JERMAINE WHITE                                  SECTION "R" (4)
ANTHONY BOGEN


## ORDER AND REASONS

Before the Court are motions to suppress evidence filed by defendants Jermaine White[1] and Anthony Bogen.[2] For the following reasons, the motions are DENIED.


## I.   BACKGROUND

Jermaine White and Anthony Bogen were arrested on August 26, 2015. According to the search warrants executed before their arrest,[3] on August 25, 2015, United States Postal Inspector Brian Cazalot noticed a package in which the sender had waived the signature requirement and instructed the carrier to the leave the package at the address if there was no response at the door.[4]  Cazalot investigated further and determined that the sender's name

---

[1]   R. Doc. 46.
[2]   R. Doc. 42.
[3]   R. Doc. 58-2; R. Doc. 58-4
[4]   R. Doc. 58-2 at 4 ¶ 4.

and address were fictitious and that the addressee was not associated with the address.[5]    Based on his experience, Cazalot recognized that these characteristics are often associated with packages containing drugs.[6] Suspicious, Cazalot had a United States Postal Inspection Service drug detection dog, "Boris," sniff the package.[7]    Boris alerted to the presence of drugs.[8]    The next day, after Postal Inspector Christopher Stifflemire discovered a package addressed to a different residence that shared the same characteristics, drug inspection dog "Spike" sniffed the package and also alerted to drugs.[9]

Cazalot and Stifflemire conveyed this information regarding both packages in affidavits to Magistrate Judge Knowles.[10]   Judge Knowles then signed federal search warrants authorizing the search of both packages.[11] Methamphetamine was found in both packages.  Subsequently, Trooper Troy Landry of the Louisiana State Police sought and obtained state search warrants for the residences to which the packages were addressed.[12]

---

[5]      *Id.* at 3-4 ¶ 5.
[6]      *Id.* at 4 ¶ 6.
[7]      *Id.* ¶ 7.
[8]      *Id.*
[9]      R. Doc. 58-4 at 2-4.
[10]     R. Doc. 58-2; R. Doc. 58-4.
[11]     *Id.*
[12]     R. Doc. 58-5.

In conjunction with local law enforcement and the Drug Enforcement Administration, Postal Inspector Cazalot conducted a controlled delivery at the address on the first package.[13]  When White received the package, he was arrested.  In addition to the methamphetamine, police uncovered marijuana and firearms at White's residence.[14] The police then went to the address listed on the second package, and executed the state search warrant at the residence.[15]   After determining that Anthony Bogen was not present, the police went to his place of employment where Bogen was arrested.[16]

According to the police reports from the Louisiana State Police and the Drug Enforcement Administration, White admitted to the Louisiana State Police officers that the package was for him and that the guns were his.[17] Additionally, after his arrest, Bogen admitted that he was working in concert with White, was to be compensated monetarily for allowing the second package to be sent to his address, and that he was aware the package contained drugs.[18]

---

[13]     R. Doc. 92-1 at 20.
[14]     *Id.*
[15]     R. Doc. 58 at 5.
[16]     *Id.*
[17]     R. Doc. 92-1 at 20 (Louisiana State Police Report).
[18]     *Id.* at 24-25 (DEA Report).

3

White and Bogen were indicted for conspiracy to distribute and to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and 846, as well as knowingly and intentionally using a communication facility, the United States Postal Service, to commit their crimes in violation of 21 U.S.C. § 843(b).[19]  White was also indicted for possession of a firearm in furtherance of a drug trafficking crime and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A).[20]

On June 10, 2016, Bogen moved to suppress all evidence obtained from the search of the two packages and statements made by Bogen to law enforcement after his arrest.[21]  On June 15, 2016, White incorporated Bogen's motion and moved to suppress all evidence obtained from the search of his residence.[22]  On June 28, 2016, the government responded to both motions in a consolidated memorandum in opposition.[23]  Both White and Bogen replied.[24]

---

[19]   R. Doc. 3.
[20]   *Id.*
[21]   R. Doc. 42.
[22]   R. Doc. 46-1 at 6-7.
[23]   R. Doc. 58.
[24]   R. Doc. 74 (Bogen); R. Doc. 79, 88 (White).

## II.   LEGAL STANDARD

Defendants' motions to suppress assert that evidence was obtained in violation of the Fourth Amendment. The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U. S. Const. amend. IV.  The Fourth Amendment "requires adherence to judicial processes," and searches conducted without warrants "are per se unreasonable under the Fourth Amendment." *Katz v. United States*, 389 U.S. 347, 357 (1967).

As the Fourth Amendment unambiguously states, there must be probable cause to obtain a search warrant.  To support a finding of probable cause to issue a search warrant, an affiant must show "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).  The affidavit must also provide the judge "with sufficient reliable information from which he could reasonably conclude that the items sought in the warrant were probably at the location sought to be searched."  *United States v. McKinney*, 758 F.2d 1036, 1042 (5th Cir. 1985) (quoting *United States v. Marbury*, 732 F.2d 390, 395 (5th Cir. 1984)).

5

"The probable cause standard is not defined by bright lines and rigid boundaries." *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992). The standard requires a magistrate to review the facts and circumstances of a case as a whole to make a common sense determination whether probable cause exists. *See Gates*, 462 U.S. at 238 (explaining that a magistrate should make "a practical, common-sense decision . . . ."); *United States v. Dickey*, 102 F.3d at 162 ("Probable cause is determined by a consideration of the totality of circumstances test."); *United States v. Peden*, 891 F.2d 514, 518 (5th Cir. 1989) ("[A] magistrate 'is simply to make a practical commonsense decision.'") (citations omitted).

Probable cause is also required under the Fourth Amendment to make a warrantless arrest. *See United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996) (citation omitted). A police officer has probable cause to arrest a person without a warrant when "the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *See id.* at 935-36 (citation omitted); *see also United States v. Randall*, 887 F.2d 1262, 1265-66 (5th Cir. 1989) (quoting *Passman v. Blackburn*, 652 F.2d 559, 564 (5th Cir.1981)). The arresting officers must know with "fair probability" that a crime occurred, and "'fair probability' is

6

something more than a bare suspicion, but need not reach the fifty percent mark." *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999).

Defendant Bogen also argues that he was not advised of his *Miranda* rights before he made incriminating statements to law enforcement. In *Miranda v. Arizona*, the Supreme Court held that before a suspect is subjected to custodial interrogation, law enforcement officers must inform the suspect of his right to remain silent and right to counsel. 384 U.S. 436, 471 (1966). "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Statements made in violation of these requirements are not admissible in court. *United States v. Ackerman*, 704 F.2d 1344, 1348 (5th Cir. 1983).

A suspect may waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. An express written or oral waiver of the defendant's Miranda rights is not necessary to establish a valid waiver, as long as the circumstances demonstrate that the defendant voluntarily waived those rights. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). But, if a person being interrogated "indicates in any manner, at any time prior to or during

7

questioning, that he wishes to remain silent, the interrogation must cease."
*Miranda*, 384 U.S. at 473-74.  The government has the burden of proving, by
a preponderance of the evidence, that the defendant voluntarily waived his
constitutional right against self-incrimination and that his statements were
voluntary.  *United States v. Rico*, 51 F.3d 495, 507 (5th Cir. 1995).

## III.  DISCUSSION

### A. Search of the Packages

Bogen argues, and White adopts the argument, that the search
warrants for the packages were not supported by probable cause.[25]   The
government responds that the defendants lack standing to challenge the
search of the packages, and even if they have standing, the warrants were
valid.

#### 1.     Standing

The government argues that the defendants have forfeited their
standing to challenge the search of the packages because they intentionally
distanced themselves from the packages by using fictitious names.[26]  While
the government correctly points out that one must have a legitimate

---

[25]      R. Doc. 42-1 at 5.
[26]      R. Doc. 58 at 7.

8

expectation of privacy in the place or object searched, *see Rakas v. Illinois*, 439 U.S. 128, 143 (1978), the government's reliance on *United States v. Daniel*, 982 F.2d 146 (5th Cir. 1993), is misplaced.  Before *Daniel*, the Fifth Circuit reiterated in *United States v. Villareal*, 963 F.2d 770 (5th Cir. 1992), that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names.  963 F.2d at 774 (citing *United States v. Richards*, 638 F.2d 765, 770 (5th Cir. 1981); *United States v. Pierce*, 959 F.2d 1297, 1303 n.11 (5th Cir. 1992)).  Although *Daniel* subsequently suggested that the court "question[s]" whether a defendant would have a legitimate expectation of privacy in a package addressed to an alias when the alias was obviously part of a criminal scheme, 982 F.2d at 149, this was *dicta* and is not controlling.  Further, as a general rule in the Fifth Circuit, "one panel may not overrule the decision of a prior panel . . . in the absence of an intervening contrary or superseding decision by [the] court sitting en banc or by the United States Supreme Court." *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998).  And, "where two previous holdings . . . conflict, the earlier opinion controls and is binding." *Id.* (citation omitted).  Because *Villareal* controls, the *Daniel* decision and the decisions of courts outside of this Circuit do not help the government.

Even assuming *arguendo* that *Daniel* controlled, *Daniel* found it relevant that at trial, the defendant argued that the named recipient of the package was not an alias or a fictitious name, but a different person entirely. 982 F.2d at 149.  This is not the situation here, where Bogen argues that he had a subjective expectation of privacy in the package that was objectively reasonable.[27] *Cf. United States v. Thompson*, No. 14-153, 2016 WL 3476714, at *4-6 (E.D. La. June 27, 2016) (finding defendant lacked standing to challenge search of package sent with and addressed to fictitious names because defendant not only never argued that he had a subjective expectation of privacy in the package but also would not concede that he even sent the package).  The Court therefore finds that defendants have standing to challenge the search of the packages.

### 2.    *Search of the packages*

Bogen and White argue that the searches of the packages violated the Fourth Amendment because the warrants were authorized without probable cause, and at a minimum, they are entitled to an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).  For the reasons that follow, the

---

[27]    R. Doc. 74 at 1-5.  White adopted Bogen's arguments.  R. Doc. 79 at 2.

Court finds exclusion is not warranted and that defendants are not entitled to an evidentiary hearing.

> a.    Validity of search and the good-faith exception

Defendants' motions to suppress argue that the basis for the search warrants signed by Magistrate Judge Knowles to search the packages "relied on excessively generic characteristics which cannot reasonably constitute a 'profile' for narcotics smuggling,"[28] and that the drug-detecting dogs' reliability was not established before Judge Knowles signed the warrants. Therefore, according to defendants, the warrants lacked probable cause.

In considering a Fourth Amendment challenge to a seizure conducted pursuant to a search warrant, the Court must first determine whether the seizure falls within the good-faith exception to the exclusionary rule. *See United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897 (1984)). If the good-faith exception applies, that ends the inquiry, and the Court need not reach the question of probable cause. *Id.*

If the exception does not apply, the court must analyze the magistrate judge's belief that probable cause existed. *See United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000). A magistrate judge's determination on

---

[28]    R. Doc. 42-1 at 5.

probable cause "is entitled to great deference," *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991) (citing *Gates*, 462 U.S. at 236 n.10), and a reviewing court "looks to see only whether a magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing," *Id.* (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)).   Because the Court determines that the good faith exception applies, the Court need not address whether the Magistrate Judge had a substantial basis to conclude that the search would uncover evidence of wrongdoing.

Here, the officers who executed the search had judicially authorized search warrants.  "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) (citing *Leon*, 468 U.S. at 922-23). *Leon* did recognize that if the magistrate was misled by information in an affidavit that the "affiant knew was false or would have known was false except for his reckless disregard of the truth," the good-faith exception would not apply and the evidence would be suppressed.  468 U.S. at 923 (citing *Franks*).  The Fifth Circuit has extended this *Franks*-exception to omissions in the affidavit as well.  *See, e.g.*, *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995). Still, to warrant exclusion, the factual misrepresentations or omissions in the

affidavit must be dispositive, meaning that without the falsehood or omission there would not be probable cause. *Davis*, 226 F.3d at 351.

Defendants argue that either the affiants' misrepresentation about the "profile" in the affidavits to Magistrate Knowles or the omission of the statistical likelihood that packages fitting this "profile"[29] actually contain drugs means that the good-faith exception does not apply.[30] White also argues that the good-faith exception should not apply because there was no information about the drug-detecting dogs' reliability in the affidavits.[31] These arguments are unavailing.

At the outset, the Court notes that defendants' motions do not point to any actual misrepresentation that the affiants either knew was false or would have known was false but for their reckless disregard of the truth. Both affidavits plainly describe the direct observations of the affiants as well as inferences they made based on their experience.[32] The only piece of information in the affidavit that could even be considered a misrepresentation is in Cazalot's affidavit. In his affidavit to Magistrate

---

[29]    This profile refers to characteristics noticed by the United States Postal Inspection Service that are frequently shared by packages that contain drugs shipped through the United States Postal Service. R. Doc. 58-2 at 3.

[30]    R. Doc. 42-1 at 6-8.

[31]    R. Doc. 46-1 at 2-3.

[32]    R. Doc. 58-2; R. Doc. 58-4.

Judge Knowles, Cazalot attests that, after running the recipient's address through a law enforcement database, "it appears that Kierra Fletcher no longer resides at the address."[33]  White argues that Cazalot "said that Kierra Fletcher was disassociated from the premises in 'November 2014,'"[34] and has submitted an affidavit from Fletcher attesting that the utilities were in her name and she still paid rent through August 2015.[35]

A review of the affidavit reveals that nowhere does Cazalot attest that Fletcher was disassociated from the premises in November 2014.  He merely attests that Fletcher does not appear to be reside there.  In fact, Fletcher's affidavit attests that she vacated the residence three months before August 25, 2016.[36]  Therefore, Cazalot's attestation that Fletcher did not appear to reside at the residence does not amount to a misrepresentation of the truth, and it certainly cannot be said that he knew it to be false or disregarded the truth.

In terms of any omissions, neither the omission of the statistics on the "profile," nor the omission of information on the dogs' reliability, warrants the conclusion that the good-faith exception should not apply.  This follows

---

[33]    R. Doc. 58-2 at 3-4 ¶ 5.

[34]    R. Doc. 88 at 2.

[35]    R. Doc. 88-1.

[36]    *Id.*

because there would still be probable cause even if the information were included. *See id.* Even if the officers deliberately omitted statistical information regarding the likelihood that packages that match this profile contain drugs, the magistrate could still find probable cause based on the other information included in the affidavit. Regardless of any statistics on the "profile," the affidavits attest to the facts that the packages were mailed with Express Mail, that drug dealers frequently use Express Mail, that the packages were sent from a fictitious address to an address with fictitious recipients, the signature requirement was waived, and that drug-detecting dogs who were trained to alert to drugs alerted to the presence of drugs in the packages.[37] The Fifth Circuit has already held that these factors by themselves are sufficient to justify the issuance of a warrant. *See Daniel*, 982 F.2d at 151-52 (finding that an affidavit that explains why a package was suspicious, that drug dealers often ship drugs using the same method as the package at issue, and that a drug-detecting dog that is trained to detect the presence of drugs alerted to the package is information that "clearly constitutes a substantial basis for issuing a warrant"). Therefore, it cannot be said that the omission of any statistical information on the profile misled

---

[37] R. Doc. 58-2 at 3-4; R. Doc. 58-4 at 3-4.

15

the magistrate or that there would be no probable cause if the omitted information were included.

The same is true for any omitted information regarding the drug-detecting dogs' reliability. The affidavits both note that the dogs, Boris and Spike, were trained to alert to the presence of drugs and have been certified within a year of the search.[38] The defendants point out that the affidavits do not, however, identify the certifying agency, the success rate of the dogs, or "any other information necessary to judge the dog's credibility."[39] Unless the inclusion of this information would establish that there was no probable cause, the good faith exception would still apply. But the Fifth Circuit has held that a showing of the dog's training and reliability is not necessary to obtain a search warrant or support probable cause based on a drug-detecting dog's alert. *See United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) ("Because a showing of the dog's reliability is unnecessary with regard to obtaining a search warrant, *a fortiori*, a showing of the dog's reliability is not required if probable cause is developed on site as a result of a dog sniff."); *United States v. Thompson*, 540 F. App'x 445, 447 (5th Cir. 2013) (citation omitted). Therefore, because the omitted information on the dogs neither

---

[38]     R. Doc. 58-2 at 3 ¶ 7; R. Doc. 58-4 at 3 ¶ 7.

[39]     R. Doc. 42-1 at 6.

16

misled the magistrate, nor was necessary to a finding of probable cause, the good faith exception applies and exclusion of evidence found after the search of the packages is not warranted.

b.    *Franks* hearing

Finally, defendants have not made the requisite showing under *Franks* to receive an evidentiary hearing on these alleged misrepresentations or omissions.   In the Fifth Circuit, an "evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact."   *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983).   The Court has discretion to determine whether a hearing is required, depending on the facts of a case.   *Id.* (quoting *United States v. Losing*, 539 F.2d 1174, 1178 (8th Cir. 1976)).

To receive a hearing under *Franks*, the defendants bear the burden in making a "substantial preliminary showing," 438 U.S. at 155, that the affidavit upon which the search warrant was authorized contained misleading misrepresentations or omissions that are dispositive to the finding of probable cause.   *Tomblin*, 46 F.3d at 1376-77.   In other words, a hearing under *Franks* is not warranted unless probable cause does not exist after the removal of the misleading misrepresentations or omissions.   *See Dickey*, 102 F.3d at 161-62 (noting that defendants are not entitled to *Franks*

17

"hearing if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause").  For the reasons described above, defendants have not carried their burden in making that preliminary showing because the removal of the alleged misrepresentations and omissions would not negate the finding of probable cause.  Therefore, a *Franks* hearing is not warranted.  *See Thompson*, 540 F. App'x at 447 (holding that an evidentiary hearing on drug-detecting dog's reliability is not required).

## B.    Search of the Residences

White's motion argues that the state search warrants authorizing the searches of White's and Bogen's residences were invalid because they were "anticipatory search warrants" that did not refer to "triggering conditions." As explained by the Supreme Court in *United States v. Grubbs*, 547 U.S. 90 (2006), anticipatory search warrants are warrants based upon a showing of probable cause that at some future time (but not presently), evidence of a crime will be at a specific location.  546 U.S. at 94 (quotation omitted).  These warrants often subject their execution to so-called "triggering conditions," which are conditions precedent that must occur before the search may be carried out.  *Id.*

White's argument is unavailing for two reasons.  First, the state search warrants in question do not appear to be "anticipatory" under *Grubbs*, as the warrants in question clearly refer to the present, not a time in the future.  The warrants signed by the Louisiana state judge explains the basis for the belief that "there is *now* being concealed certain property, namely any and all controlled dangerous substances including Methamphetamine"[40] in Bogen's and White's residences.  Second, even if the warrants were "anticipatory," the Supreme Court made unmistakably clear in *Grubbs* that "the Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself."  *Id.* at 99.

White also suggests the warrants may be invalid because no return is attached to the documents provided.[41]  Under Federal Rule of Criminal Procedure 41(f)(1)(D), any officer executing a search warrant must promptly return it—together with a copy of the inventory—to the judge who signed the warrant.  It does not appear that this return is in the record.  Failure to file the return, however, is "ministerial and does not affect the validity of the search."  *United States v. Wilson*, 451 F.2d 209, 214 (5th Cir. 1971).

---

[40]   R. Doc. 58-5 at 1, 4 (emphasis added).

[41]   R. Doc. 46-1.

Therefore, if the officer who executed the warrant did in fact fail to file the return, this failure will not warrant the suppression of evidence.

White's only argument for suppression of the evidence found after the search of the residences is that the warrants were invalid. Because White's sole argument is wrong, he has not carried his burden that the search was carried out in violation of the Fourth Amendment. *United States v. Kelly*, 981 F.2d 1464, 1467 (5th Cir. 1993).

Even assuming that the warrants were invalid, the good-faith exception would apply. As described above, "[i]ssuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *Craig*, 861 F.2d at 821 (citation omitted). White argues that the good-faith exception should not apply because the affidavit attached to the warrant applications did not provide the authorizing judge with a substantial basis for concluding that probable cause existed. This argument is meritless. Probable cause "does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *Daniel*, 982 F.2d at 151. The affidavits by State Trooper Troy Landry attested that a suspicious package was addressed to a fictitious name, a drug-detecting dog alerted to the presence of drugs within the package, and a search authorized by a

20

federal warrant revealed the presence of drugs.  This information surely would warrant the judge's conclusion that there was a probability of criminal activity, a finding which is entitled to "great deference."  *Id.*

### C. Statements Made to Law Enforcement

Lastly, defendants seek to suppress statements made by them to law enforcement after their arrest.  White's argument that his statements should be suppressed relies entirely on his arguments alleging that the searches were invalid, arguments that have already been addressed and rejected.  As such, this section addresses only Bogen's arguments regarding his statement.

Bogen argues that he was arrested without probable cause and that his statement to law enforcement was made before he was made aware of his rights.  Each argument will be addressed in turn.

#### 1.    *Arrest of Bogen*

Bogen was arrested at his place of employment and the arresting officers did not have an arrest warrant.  Although defendants seeking to suppress evidence usually bear the burden of establishing that the evidence was obtained in violation of the Fourth Amendment, when a defendant is subject to a warrantless arrest, the government bears the "the ultimate burden of proving that the officer had probable cause." *See, e.g.*, *Ho*, 94 F.3d at 936.

21

A warrantless arrest is constitutional "so long as the officer has 'probable cause to believe that the suspect has committed or is committing an offense.'" *Virginia v. Moore*, 553 U.S. 164, 173 (2008) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).  As the Fifth Circuit has explained, "[p]robable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (internal quotation marks omitted). Additionally, probable cause can be supported by the collective knowledge of law enforcement who work together and communicate with each other before the arrest.  *See, e.g.*, *United States v. Head*, 693 F.2d 353, 358 (5th Cir. 1982).  Furthermore, when determining whether probable cause exists, reviewing courts must examine the "totality of the circumstances," mindful that the court is dealing with "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 230-31 (quotation omitted).

Throughout the government's opposition memorandum and the attached documents, the government points to facts and circumstances that the officers who arrested Bogen were aware of at the point of his arrest.  This

22

includes 1) that Bogen was associated with the address to which one of the packages was sent; 2) that a search authorized by a federal search warrant revealed the package contained methamphetamine;[42] 3) that at Bogen's residence, his girlfriend told police that Bogen "possibly could be expecting a package;"[43] 4) a search of Bogen's residence (authorized by a state search warrant) revealed a handgun with a serial number that matched a gun reported stolen from a vehicle burglary from September, 2014;[44] 5) and the search also turned up drug paraphernalia.[45]  As described above, probable cause existed before the search of Bogen's residence, and finding drug paraphernalia and a stolen firearm at the residence only bolsters that finding.  Therefore, the government has met its burden in establishing that there was probable cause to arrest Bogen.

In arguing that there was no probable cause, Bogen fails to point to any case in which a court deemed these facts or similar facts insufficient to find probable cause.  Further, although he argues that before he was arrested, White "expressly stat[ed] that Mr. Bogen was not involved in the narcotics shipments,"[46] the record reveals that this statement to law enforcement was

---

[42]   R. Doc. 58 at 16.
[43]   R. Doc. 92-1 at 20.
[44]   *Id.*
[45]   *Id.* at 21; *see also* R. Doc. 58 at 5.
[46]   R. Doc. 42-1 at 3.

about Travis Bogen, not Anthony Bogen.[47]   White did make a subsequent statement to law enforcement regarding Anthony Bogen, but this statement did not state that Anthony Bogen was "not involved," as White told the officers only that "Bogen did not know about all the contents in the parcel."[48] It is not clear from the report if White made this statement after Bogen had already been arrested, but even if Bogen had yet to be arrested, this statement by itself would not change the calculus on probable cause to arrest Bogen. Therefore, White's statements do not show that there was not probable cause for Bogen's arrest.

### 2.   Miranda *Warnings*

Next, Bogen argues that he made an incriminating statement to law enforcement before he was informed of his right to remain silent.[49]   Bogen's motion to suppress makes clear that he is not contesting that he received *Miranda* warnings.[50]   At issue, however, is the timing of the warnings and whether Bogen made the incriminating statement before or after receiving

---

[47]      R. Doc. 92-1 at 20.

[48]      *Id.* at 21.

[49]      Bogen's statement to law enforcement included three incriminating acknowledgements: 1) that Bogen was to be compensated monetarily for allowing the package to be delivered to his residence; 2) that Bogen was working with White to have the package delivered; and 3) that Bogen knew the package contained marijuana.  *Id.* at 24-25.

[50]      R. Doc. 42-1 at 2.

the warnings.  Statements obtained during custodial interrogation without adequate *Miranda* warnings are generally inadmissible.  *United States v. Stevens*, 487 F.3d 232, 241 (5th Cir. 2007).

Bogen's argument that he made the statement before receiving *Miranda* warnings relies on alleged inconsistencies between the police report prepared by the Louisiana State Police and the report prepared by the DEA.[51]  According to Bogen, the DEA report indicates that Bogen was *Mirandized* upon his arrest at his place of employment, while the state police report does "not state that Mr. Bogen had been informed of his formal arrest, or his *Miranda* rights, before he gave the inculpatory statement."[52]

Contrary to Bogen's argument, the DEA report and the state police report are consistent, and indicate that Bogen was *Mirandized* before he made any incriminating statements.  According to the DEA report, Bogen was *Mirandized* by Special Agent Cazenavette, as witnessed by Postal Inspector Cazalot.[53]  After being *Mirandized*, Bogen told law enforcement of his involvement with White.[54]  The state police report does not contradict this account.  Though the report indicates that DEA Agent Cazenavette told

---

[51]     *Id.*
[52]     *Id.*
[53]     R. Doc. 92-1 at 24 ¶ 6.
[54]     *Id.*

Louisiana State Police Inspector Michael Garner of Bogen's statement to Cazenavette before *Garner* gave Bogen *Miranda* warnings,[55] this does not in any way suggest that Cazenavette had not *Mirandized* Bogen before Bogen spoke to Cazenavette.  Other than the alleged "inconsistencies," Bogen points to no evidence or anything in the record to cast doubt on the police report indicating that Bogen did receive *Miranda* warnings before making any incriminating statements.  Therefore, the Court finds that the government has carried its burden in showing that Bogen did receive the benefits of *Miranda* before making the incriminating statement.

Furthermore, because Bogen does little more than assert that the warnings came after, not before, his incriminating statement, the Court finds that an evidentiary hearing on this issue is not warranted.  Bogen's conclusory allegations are not "sufficiently definite, specific, detailed, and nonconjectural" to allow this Court to find that a substantial claim has been presented.  *See Harrelson*, 705 F.2d at 737 (citing *United States v. Poe*, 462 F.2d 195, 497 (5th Cir. 1972); *Id.* (stating that "general or conclusionary assertions, founded upon mere suspicion or conjecture" do not warrant evidentiary hearing); *see also United States v. Duffaut*, No. 01-08, 2001 WL 365039, at *1-2 (E.D. La. Apr. 9, 2001) (denying request for evidentiary

---

[55]     *Id.* at 21.

26

hearing when defendant did not present any evidence and solely brought forth conclusorial allegations).

After noting that Bogen did receive *Miranda* warnings, the government contends that Bogen's post-*Miranda* statements were made knowingly and voluntarily.[56]  Bogen's argument is focused on his allegation that he was not warned before making the statement, and he does not argue that his post-warning statements were not knowingly and voluntarily made or that he did not understand his rights.   Given that it highly probative that "a suspect chooses to speak after being informed of his rights is," *Oregon v. Elstad*, 470 U.S. 298, 318 (1985), and that there is no evidence or argument suggesting that Bogen was oppressed or coerced into speaking, the Court finds that the government has met its burden to show that Bogen's statement was given after a knowing and voluntary waiver of his right against self-incrimination.  *See Berghuis v. Thompkins*, 560 U.S. 370, 385-86 (2010) (finding that defendant waived right to remain silent when there was no contention that the defendant did not understand his rights, defendant answered police questions, and there was no evidence or argument that statement was coerced).

---

[56]     R. Doc. 58 at 17.

Because the government has carried its burden in showing that Bogen's statement to Special Agent Cazenavette was made after a knowing and voluntary waiver of his right against self-incrimination, the statement will not be suppressed.

## IV.   CONCLUSION

For the foregoing reasons, defendants White and Bogen's motions to suppress are DENIED.

New Orleans, Louisiana, this ___7th___ day of February, 2017.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE