UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 16-40 |
| JERMAINE WHITE | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court are two *pro se* motions by defendant Jermaine White. First, White moves[1] to dismiss an earlier petition[2] for habeas corpus brought under 28 U.S.C. § 2255, and requests appointment of counsel to assist him in bringing a motion for compassionate release. Second, White moves for compassionate release under 18 U.S.C. § 3582.[3] For the following reasons, the Court grants defendant's motion to dismiss the § 2255 petition, denies his request for counsel, and denies his motion for compassionate release.

---

[1]     R. Doc. 203.
[2]     R. Doc. 201.
[3]     R. Doc. 207.

I.  **BACKGROUND**

On August 2, 2017, White pleaded guilty to Count One of an indictment,[4] which charged him with conspiracy to distribute and to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846.[5]

According to the factual basis White signed, the United States Postal Inspection Service, Drug Enforcement Agency, and Louisiana State Police began investigating shipments of methamphetamine through the mail in August 2015.[6]  The investigators identified White as the intended recipient of two packages of methamphetamine that were sent through the United States Postal Service from Los Angeles, California, to Houma, Louisiana.[7]  The first package contained 655.2 grams of methamphetamine, with a purity level of 97.5%.[8]  The second contained 443.1 grams, and a purity level of 99%.[9]

---

4      R. Doc. 106 at 1.
5      R. Doc. 3 at 1-2.
6      R. Doc. 107 at 1.
7      *Id.*
8      *Id.* at 3.
9      *Id.* at 4.

On August 26, 2015, investigators conducted a controlled delivery at the residence where White lived, and executed a search warrant.[10] Among other items, the investigators seized marijuana, a rifle, a revolver, $6,669 in cash, and body armor.[11] In a post arrest statement, White admitted that the guns were his, and that he had acquired multiple pounds of methamphetamine and marijuana through the mail from an individual in California.[12]

On October 2, 2019, the Court sentenced White to 120 months of imprisonment, to be followed by a five-year term of supervised release.[13] White is incarcerated at Three Rivers FCI in Texas.[14] He has a projected release date of August 16, 2024.[15]

---

[10] *Id.*
[11] *Id.* at 5.
[12] *Id.*
[13] R. Doc. 187 at 2-3.
[14] See Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited April 29, 2021).
[15] *Id.*

## II. DISCUSSION

### A. Motion to Dismiss § 2255 Petition and for Appointment of Counsel

On November 6, 2020, White filed a petition for habeas corpus under 28 U.S.C. § 2255, alleging ineffective assistance of counsel during his plea negotiation and sentencing.[16] The Court ordered the United States to respond by February 12, 2021.[17] But, on November 27, 2020, White moved to dismiss his § 2255 petition, stating that he instead seeks to bring a motion for compassionate release.[18] The Government does not oppose White's motion to dismiss.[19]

In the motion to dismiss, White states that he has new information relevant to his § 2255 petition.[20] Because this information may have changed or mooted the arguments in his § 2255 petition, the Court grants the motion to dismiss. White's § 2255 petition is dismissed without prejudice.

White also moves the Court to appoint counsel in connection with his request for compassionate release.[21] But there is no constitutional or statutory right to counsel beyond direct appeal. *See Pennsylvania v. Finley*,

---

16   R. Doc. 201 at 4.
17   R. Doc. 202.
18   R. Doc. 203 at 1.
19   R. Doc. 206.
20   R. Doc. 203 at 1.
21   *Id.*

4

481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). A Court may appoint counsel in a compassionate release proceeding if it finds doing so would be "in the interest of justice." *United States v. Delco*, No. 09-57, 2020 WL 4569670, at * 2 (E.D. La. Aug. 7, 2020); *United States v. Mogan*, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020); *cf. United States v. Moore*, 400 F. App'x 851, at *1 (5th Cir. 2010) ("There is no right to appointed counsel in a § 3582(c)(2) proceeding . . . . Moreover, the interest of justice did not require the appointment of counsel."); *United States v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008) (appointing counsel on appeal to argue unresolved questions of Fifth Circuit law). White's motion, seeking compassionate release based on COVID-19 and family circumstances,[22] does not involve complicated or unresolved issues of law. Accordingly, the Court finds that the interest of justice does not require the appointment of counsel. The Court denies defendant's request for appointed counsel.

### B. Compassionate Release

#### 1. Exhaustion

Before a federal court will assess the merits of a motion for compassionate release, defendants must show that they have "fully

---

22   *See* R. Doc. 207.

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or that "30 days [have passed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582. The Fifth Circuit has clarified that "all requests for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, No. 20-5997, 2020 WL 7132458 (U.S. Dec. 7, 2020). The defendant bears the burden of demonstrating exhaustion. *See, e.g.*, *United States v. Rodriguez*, No. 15-198, 2020 WL 5369400, at *2 (E.D. La. Sept. 8, 2020); *United States v. Murray*, No. 19-041, 2020 WL 4000858, at *2 (E.D. La. July 15, 2020); *United States v. Castro*, No. 15-309, 2020 WL 3076667, at *2 (E.D. La. June 10, 2020).

In addition, the Fifth Circuit has held that the exhaustion requirement is a "mandatory claim-processing rule." *Franco*, 973 F.3d at 468. Like other mandatory-claim processing rules, the Court must enforce the rule if a party properly raises the issue. *See id.*; *see also Pierre-Paul v. Barr*, 930 F.3d 684, 692 (5th Cir. 2019) ("A claim-processing rule is mandatory to the extent a court must enforce the rule if a party properly raises it.").

The Government contends that White failed to show exhaustion, and states that the BOP has no record of a request for a reduction in sentence.

6

After the Government filed its response, White submitted a letter to the Court, attaching a memorandum from BOP officials to S. Merendino, the warden at FCC Pollock.[23] The memorandum is dated April 17, 2020, and it details White's administrative request for compassionate release based on kidney stones, allergy problems, and his mother's battle with cancer—the same grounds he asserts in this motion. Because 30 days lapsed between the date of this memorandum and White's motion for compassionate release, the Court finds that defendant exhausted administrative remedies pursuant to 18 U.SC. § 3582(c)(1)(A). Accordingly, the Court proceeds to the merits of White's motion.

## 2. *Extraordinary and Compelling Reasons*

Courts may only grant compassionate release when "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)-(ii). The relevant policy statement is set out in § 1B1.13 of the United States Sentencing Guidelines. The commentary to § 1B1.13 describes four "extraordinary and compelling reasons" that could warrant a reduced sentence: (1) medical conditions, (2)

---

[23]   R. Doc. 213-1 at 3. Among White's medical records is a form indicating that he was transferred from FCI Pollock on October 23, 2020.

age, (3) family circumstances, and (4) "[o]ther [r]easons." U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). The commentary further specifies that, to be sufficiently serious to warrant release, a medical condition must be a "terminal illness" or a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

### i.   White's medical conditions

In his motion, White states that he suffers from "allergy problems and kidney stones," and asks for release "due to COVID-19." In *United States v. Thompson*, the Fifth Circuit noted that, "in some exceptional cases" courts "have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID." 984 F.3d 431, 434 (5th Cir. 2021). But there is no "unanimous" agreement in the courts that "every high-risk inmate with preexisting conditions" has demonstrated an extraordinary and compelling reason. *Id.* The court in *Thompson* affirmed a denial of compassionate release for a defendant who suffered from hypertension, high cholesterol, and had previously suffered a stroke. *Id.* at 1.

The medical concerns that White points to are not conditions that satisfy the "extraordinary and compelling" standard. White has not shown

that his allergies and kidney problems are a "terminal illness," or that they "substantially diminish" his ability "to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." Further, although the Centers for Disease Control and Prevention ("CDC") has recognized that some underlying medical conditions present higher risks from COVID-19,[24] it does not list kidney stones or allergies among such conditions.

The heart of White's claim is a generalized fear of COVID-19. But generalized fear of the virus does not rise to an "extraordinary and compelling reason" justifying release. *See, e.g.*, *Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitled a prisoner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Marco Perez-Serrano*, No. 13-2, 2020 WL 2754914, at *2 (S.D. Miss. May 27, 2020) ("A generalized fear of contracting COVID-19 does not justify compassionate release."). Moreover, Three Rivers

---

[24] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 29, 2021).

9

FCI reports zero positive COVID-19 cases among the inmate population.[25] The Court finds that White's medical conditions do no constitute extraordinary and compelling reasons meriting compassionate release.

### ii. White's family circumstances

White also contends that his family circumstances merit compassionate release.[26] The application notes to the relevant policy statement in the Sentencing Guidelines provide that (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," and (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" could each amount to "extraordinary and compelling reasons" under the compassionate release statute. U.S.S.G. § 1B1.13, cmt. n.1(C).

For guidance on what constitutes "incapacitation," courts look to the BOP's non-binding Program Statement for processing compassionate release requests.[27] *United States v. Bolden*, No. 16-320, 2020 WL 4286820, at \*4 (W.D. Wash. July 27, 2020) (looking to the BOP's relevant Program

---

[25] Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited April 29, 2021).
[26] R. Doc. 207 at 4.
[27] Federal Bureau of Prisons, Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 7.

Statement for guidance); *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (same); *United States v. Collins*, No. 15-10188, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well").

The BOP's Program Statement provides two definitions for the word "incapacitation."[28] As to the "the caregiver of the defendant's minor child or minor children," the Program Statement provides: " 'incapacitation' means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child."[29] As to the "[t]he incapacitation of the defendant's spouse or registered partner," the Program Statement provides:

> 'incapacitation' means the inmate's spouse or registered partner has: [s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or [a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.[30]

---

[28]   *Id.* at 7, 10.
[29]   *Id.* at 7.
[30]   *Id.* at 10.

11

Here, White raises two family circumstances: he has sole custody of his daughter, and his mother is "battling cancer."[31] But White does not allege that his daughter is without a caregiver, or that her caregiver has died or been incapacitated. That White's daughter is under his sole legal custody, without more, is not enough to demonstrate an extraordinary and compelling reason meriting compassionate release. Further, even assuming that White could establish the requisite "family circumstances" based on his mother's condition,[32] White does not allege her cancer has "incapacitated her," *i.e.*, left her "completely disabled."[33] Thus, the Court finds that White has not shown that his family circumstances are extraordinary and compelling reasons meriting compassionate release.

    3. *Section 3553(a) Factors*

When determining whether to modify a sentence under Section 3582(c)(1)(A), the Court must "consider[] the factors set forth in section 3553(a)." *See* 18 U.S.C. § 3582(c)(1)(A). Here, "the nature and

---

[31] R. Doc. 207 at 3-4.
[32] The Court notes that the defendant's parent is not the sort of familial relationship contemplated by the Guidelines. See U.S.S.G. § 1B1.13, application note 1(C) (referring only to the defendant's "caregiver of defendant's minor child" and the defendant's "spouse or registered partner").
[33] Federal Bureau of Prisons, Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10.

circumstances of the offense and the history and characteristics of the defendant" militate against compassionate release.

White was convicted of serious drug offenses involving large quantities of methamphetamine.[34] As set out in the presentence investigation report, which the Court adopted at sentencing,[35] White's role in the conspiracy was as an organizer.[36] Moreover, the Court applied a sentencing enhancement because the offense conduct involved possession of a dangerous weapon— the two firearms investigators discovered in his residence.[37] Additionally, White has a significant criminal history, including convictions for theft, burglary, three separate domestic abuse incidents, false statements to FEMA in the wake of Hurricane Katrina, and possession of marijuana.[38] The Court finds that the § 3553(a) factors do not support a reduction in White's sentence.

### 4. Danger to the Community

When ruling on a motion for compassionate release, the Court must assess whether the defendant is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). In making this determination,

---

34   R. Doc. 187 at 1.
35   R. Doc. 188 at 1.
36   R. Doc. 183 at 8, ¶ 29.
37   *Id.* at 9, ¶ 34.
38   *Id.* at 10-13, ¶¶ 43-50.

the Court looks to 18 U.S.C. § 3142(g). *Id.* The factors set out in § 3142(g) are similar to § 3553(a), and include the "nature and circumstances of the offense" and the "the history and characteristics" of the defendant. 18 U.S.C. § 3142(g)(1)-(4). As noted above, these factors weigh against compassionate release. The Court finds that the nature of White's drug offense, as well as White's criminal history, militate against release.

### III. CONCLUSION

For the foregoing reasons, White's motion to dismiss his petition for habeas corpus under 28 U.S.C. § 2255 is GRANTED. The Court DISMISSES the § 2255 petition WITHOUT PREJUDICE. The Court DENIES White's request for appointed counsel in connection with his motion for compassionate release. Finally, the Court DENIES White's motion for compassionate release.

New Orleans, Louisiana, this __30th__ day of April, 2021.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE